HAYES F. MICHEL (SBN 141841)
THE LAW OFFICE OF HAYES F. MICHEL, PC
1880 Century Park East, Suite 1011
Los Angeles, California 90067
Tel: (310) 277.7342
Email: hayes@hfmichel.law

Attorneys for Defendant
IMANI WILCOX

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMYE ROBINSON, p/k/a BOOTIE BROWN, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>IMANI WILCOX, p/k/a IMANI, an individual; and DOES 1 through 20,<br><br>    Defendants. | Case No.: 2:23-cv-08517-SK<br><br>[Hon. Steve Kim]<br><br>**IMANI WILCOX'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with: (1) Statement of Undisputed Facts; (2) Declaration of Hayes Michel; (3) Declaration of Imani Wilcox; (4) Request for Judicial Notice; (5) [Proposed] Order]<br><br>Hearing Date:  July 8, 2026<br>Time:  10:00 a.m.<br>Department: 540<br><br>Action Filed: October 9, 2023 |

**PLEASE TAKE NOTICE that:**

On July 8, 2026, at 10:00 a.m., or as soon thereafter as may be heard, in Department 540 of the United States District Court, Central District of California, located at 255 E. Temple Street, Los Angeles, California 90012, Defendant  Imani Wilcox will and hereby does move for an Order granting Partial Summary Judgment on the following issues:

Issue 1: As a Matter of Law, the Issue of "Priority of Use" Should Be Summarily Adjudicated Against Mr. Robinson.

Issue 2: The Issue Of Whether Mr. Wilcox Abandoned His Trademark Rights As Of October 22, 2013 (The Bond Payment Date) Should Be Summarily Adjudicated in Mr. Wilcox's Favor.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities; the concurrently-filed Statement of Undisputed Facts; the concurrently-filed Declarations of Imani Wilcox and Hayes Michel; and the concurrently-filed Request for Judicial Notice, along with the files and records of this case and any further evidence and/or argument that the Court may review.

On May 13, 2026, at the Final Pretrial Conference, the Court directed Mr. Wilcox to file this Motion on May 26, 2026, with a hearing date scheduled for July 8, 2026.  There was no "meet and confer" under Local Rule 7-3 prior to the filing of this Motion.

Dated: May 26, 2026

*/s/Hayes F. Michel*
HAYES MICHEL
Attorney for Defendant
IMANI WILCOX

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………………..1

II.     STATEMENT OF FACTS........................................................................................2

A. Facts Relating To The Band..........................................................................................2

B.      Mr. Robinson's Position Re Trademark Ownership:  1992-2013. .......................................3

C.      Mr. Robinson's Position Re Trademark Ownership:  April, 2012.......................................6

D.      The Final Pretrial Conference .......................................................................................7

III.    LEGAL ARGUMENT….………………………………………………………… 9

A.      As a Matter of Law, the Issue of "Priority of Use" Should Be Summarily Adjudicated Against Mr. Robinson. ..........................................................................10

B.      The Issue Of Whether Mr. Wilcox Abandoned His Trademark Rights As Of October 22, 2013 (The Bond Payment Date) Should Be Summarily Adjudicated In Mr. Wilcox's Favor..............................................................................................11

IV.     CONCLUSION, BUT UNFORTUNATELY, CONFUSION………..………………16

<strong>TABLE OF AUTHORITIES</strong>

*Electro Source, LLC v. Bradness-Kalt-Aetna Group, Inc.*,
458 F. 3d 931 (9th Cir. 2006) …………………………………………13

*eMachines, Inc. v. Ready Access Memory, Inc.*,
2001 WL 456404 (C.D. Cal. 2001)………………...………………..12

*Herb Reed Enterprises v. Florida Entertainment Management, Inc.*,
736 F. 3d 1239 (9th Cir. 2013),)……………………………….... 13-14

*Mitigation Technologies, Inc. v. Pennartz*,
2015 WL 12656936 (C.D. Cal. 2015) ……………………………  15

*Neo4j, Inc. v. Pure Think, LLC*,
480 F. Supp. 3d 1071 (N.D. Cal. 2020) …………………………….15

*Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope
    of Los Angeles, Inc.*, 302 F. Supp. 2d 1131 (C.D. Cal. 2004)………..9

*San Diego Comic Convention v. Dan Farr Prods.*,
2017 WL 42270000 (S.D. Cal. Sept. 22, 2017)..…………………..15

*Sengoku Works Ltd. v. RMC International, Ltd.*,
96 F. 3d 1217 (1996)………………………..…………………… 10

*Vuitton et Fils S.A. v. J. Young Enterprises*,
644 F.2d 769 (9th Cir. 1981)……………………………………… 11

## I.     **<u>INTRODUCTION</u>**

If an individual was going to file a lawsuit claiming sole ownership of a band name, one might think that questions such as "when did he become the sole owner of the band's common law trademark rights?" and "through what actions (or inactions) did a founding co-member of the band convey those rights to the purported current sole owner?" would be relatively simple questions to answer. Apparently, that is not the case.

The good news is that, after years of contradictory statements and shifting positions, Romye Robinson appears to have finally settled on a legal theory to "justify" his claim that he is the sole owner of trademark rights in the band name "The Pharcyde":  co-founding band member Imani Wilcox <u>was</u> a co-owner of The Pharcyde common law trademark rights, but he abandoned those rights as of October 22, 2013, when, in a lawsuit filed by Mr. Robinson and Mr. Wilcox (*Robinson v. Delicious Vinyl Records*, *et. al.*, United Stated District Court, Central District of California Case No. 2:13-cv-04111-CAS-PLA), he failed to help finance a bond that was a pre-requisiste to the entry of a Preliminary Injunction preventing two former band members from performing as "The Pharcyde."

On the other hand, the bad news (for Mr. Robinson) is his recently-articulated "abandonment" theory contradicts his Complaint in this matter, which relies on the theory that Mr. Wilcox "consented" to Mr. Robinson filing the trademark application in his own name, "agreeing that Robinson would be the sole owner of the mark, and [Mr. Wilcox] would use it pursuant to a revocable limited license from Robinson." [Complaint,  ¶18, Dkt No. 1].  It contradicts his Responses to Interrogatories, where he claimed:

> Robinson is the sole owner of THE PHARCYDE Marks, as Wilcox affirmed in 2012 when he agreed to use THE PHARCYDE Marks pursuant to a revocable license controlled solely by Robinson. (Michel Decl., Ex. A, Response to Special Interrogatory No. 4, at page 9)

1

It contradicts his Proposed Jury Instructions submitted in anticipation of the Final Pretrial Conference which repeatedly referenced his previously-taken assignment argument. [Dkt. No. 108]  And, most importantly, his recently-articulated abandonment claim lacks both evidentiary and legal support.  Therefore, Mr. Wilcox respectfully requests that the Court grant Partial Summary Judgment on the following issues:

> Issue 1: As a Matter of Law, the Issue of "Priority of Use" Should Be Summarily Adjudicated Against Mr. Robinson.

> Issue 2: The Issue Of Whether Mr. Wilcox Abandoned His Trademark Rights As Of October 22, 2013 (The Bond Payment Date) Should Be Summarily Adjudicated in Mr. Wilcox's Favor.

## I.    STATEMENT OF FACTS

### A.  Facts Relating To The Band

On November 24,1992, the band The Pharcyde, consisting of Romye Robinson, Trevant "Slimkid3" Hardson, Derrick "Fatlip" Stewart, and Imani Wilcox ("the Original Members") released its first album for sale to the public, "Bizarre Ride II The Pharcyde," which sold enough copies to earn the designation of a "Gold Record," and helped earn The Pharcyde the reputation as having produced one of the most influential hip hop albums of the 1990s.  (Wilcox Decl., ¶ 2). Bizarre Ride II The Pharcyde"  contained the performances and work of each of the four Original Members of the band. (Wilcox Decl., ¶ 2)

The Pharcyde has released albums and musical sound recordings over the last 30 years, and Mr. Wilcox performed on those recordings.  (Wilcox Decl., ¶ 3). From the date of the release of the first The Pharcyde album to the present, The Pharcyde's music and entertainment products have been distributed and sold to the public and Mr. Wilcox has received royalties from the sale of those recordings and

merchandise. (Wilcox Decl., ¶ 3, 5-6). Mr. Wilcox has performed in concerts as a member of The Pharcyde for over 30 years and continues to do so.[1]

**B.      Mr. Robinson's Position Re Trademark Ownership:  1992-2013.**

Mr. Robinson has repeatedly acknowledged that Mr. Wilcox was a co-owner of The Pharcyde name and common-law trademarks.  The May 3, 1992 Recording Contract signed by Mr. Wilcox and Mr. Robinson states:

> You hereby warrant, represent and agree that:
>
> > (i) You are the sole and exclusive owner of all rights in and to the professional name "Pharcyde" (hereinafter referred to as the "Group Name"), including, without limitation, the right to utilize and to permit others to utilize the Group Name for purposes of trade, and otherwise without restriction, in connection with the master recordings recorded by the Artist hereunder, the phonograph records derived therefrom, our record business and the merchandising rights specified herein. (Request for Judicial Notice, Ex. B, Robinson Declaration in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 7-1], at RFJN 58)

As is far-too common in the music industry, the band underwent certain changes over the years.  What remained constant was Mr. Robinson's repeated insistence that he and Mr. Wilcox were the owners of the band name "The Pharcyde."  For example, a 2004 "Dissociation Agreement" (signed by both Mr.

---

[1] As Mr. Wilcox states in his Declaration:

> I have performed in concert as a member of The Pharcyde continuously from 1992 through the present, except (a) during the COVID outbreak, when almost all concert performances had stopped; and (b) a brief period of time (less than a year) in the early 2020's when Mr. Hardson, Mr. Stewart and I – in an attempt to appease Mr. Robinson (who was claiming that the three of us did not have the right to perform as The Pharcyde) -- performed under the name, "The Far Side (formerly of The Pharcyde)." After performing a few shows under that "new" name, we returned to performing under the name The Pharcyde.  (Wilcox Decl., ¶3).

Robinson and Mr. Wilcox) regarding Trevant Hardson's departure from the band states in part:

> WHEREAS, Hardson dissociated himself from Pharcyde on or about August 1, 1999 ("Termination Date") in order to pursue a solo career in the music industry and Robinson and Wilcox (collectively the "Partners") are the sole remaining partners in Pharcyde and have exclusive use of the name Pharcyde and all derivatives thereof. (Request for Judicial Notice, Ex. B, Robinson Declaration in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 7-1], at RFJN 43)

A June 2008 "Tour Agreement" for a series of concerts and signed by, among others, Mr. Robinson, states:

> Ownership of The Pharcyde name, intellectual property, and likenesses are and shall remain the sole property of Romye Robinson and Imani Wilcox.  This includes album artwork, merchandise designs, and other elements that the public may associate with "The Pharcyde."  The other artists acquire no direct right to the name or any of its affiliations by virtue of their participation in this project. (Request for Judicial Notice, Ex. B, Robinson Declaration in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 7-2], at RFJN 144)

In a February 24, 2012 letter, Eric Griffin, a lawyer writing on behalf of both Mr. Wilcox and Mr. Robinson, demanded that Mr. Hardson cease and desist using The Pharcyde name/trademarks and threatened to file a trademark infringement lawsuit on behalf of Mr. Wilcox and Mr. Robinson   (Request for Judicial Notice, Ex. B, Robinson Declaration in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 7-2] at RFJN 182). A June 7, 2012 letter from Mr. Griffin to Mr. Hardson stated in part:

> As you are aware, we are legal representatives for Imani Wilcox and Romye Robinson. Mr. Wilcox and Mr. Robinson are professionally known as and own the legal registered trademark for the recording and performing group "The Pharcyde." (Request for Judicial Notice, Ex. B, Robinson Declaration in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 7-2] at RFJN 186)

In June 2013, Mr. Robinson and Mr. Wilcox filed a lawsuit against Delicious Vinyl Records, Mr. Hardson, and Mr. Stewart (2:13-cv-04111-CAS-PLA). The Complaint, verified under penalty of perjury by both Mr. Robinson and Mr. Wilcox) stated:

> Further, the Plaintiffs [defined as both Wilcox and Robinson] have a pending trademark registration before the United States Patent and Trademark Office related to the PHARCYDE marks, which if granted, would provide this Court with exclusive jurisdiction pursuant to 28 U.S.C. §1338.
>
> ****
>
> [Wilcox and Robinson] have common law rights in the Pharcyde trademark and service mark based on their continuous use of the Pharcyde mark in California and nationwide, since 1989 in connection with the public performance of music, the sale of recorded music, and the sale of merchandise, ancillary to said music. [¶12, ¶56] (Request for Judicial Notice, Ex. A, Complaint in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 1] at ¶ 12 [RFJN 007], ¶ 56 [RFJN 014]).

In a June 12, 2013 Declaration filed in the *Delicious Vinyl* lawsuit, Mr. Robinson stated under penalty of perjury:

> In 2004, Wilcox, Hardson and I entered into a Settlement Agreement ("the Settlement Agreement"), memorializing Hardson's dissociation, and incorporating Hardson's Dissociation Agreement (the "Dissociation Agreement") as Exhibit "A" thereto. Pursuant to the terms thereof, Hardson agreed that PLAINTIFFS [defined as Wilcox and Robinson] are the "sole remaining members of Pharcyde, and have exclusive use of the name Pharcyde and all derivatives thereof."

5

****

In 2008, Wilcox, Hardson, Stewart and I embarked on a reunion tour, in preparation for which, Wilcox, Hardson, Stewart, and I entered into an Agreement (the "Tour Agreement") whereby all parties thereto agreed that "[o]wnership of "The PHARCYDE" name, intellectual property, and likenesses are and shall remain the sole property of Romye Robinson and Imani Wilcox. This includes album artwork, merchandise designs, and other elements that the public may associate with "The PHARCYDE"….

Accordingly, the sole and exclusive ownership of common law trademarks and service marks including, without limitation, the famous marks, PHARCYDE and BIZARRE RIDE II THE PHARCYDE, belongs to Imani Wilcox and I. (Request for Judicial Notice, Ex. B, Robinson Declaration in *Robinson v. Delicious Vinyl*, Case No. CV13-04111 [Dkt. No. 7-1] at ¶ 9 [RFJN 032]; ¶¶ 12-13 [RFJN 033].

C.    **Mr. Robinson's Position Re Trademark Ownership: April, 2012.**

Despite his repeated insistence from 1992-2013 that Mr. Wilcox was a co-owner of The Pharcyde common law trademarks, on April 7, 2012, Mr. Robinson filed a trademark application with the USPTO for the mark "THE PHARCYDE" in standard word format for use in Trademark Class 41, for "Entertainment services in the nature of live musical performances". (Request for Judicial Notice, Ex. E, Application [RFJN 294]). Mr. Robinson's April 7, 2012 Application failed to list Mr. Wilcox as a joint owner of THE PHARCYDE trademark. Request for Judicial Notice, Ex. E, Application [RFJN 294]).As part of Mr. Robinson's Application for THE PHARCYDE in International Class 41 (Ser. No. 85/591,754), Mr. Robinson made the following declaration under penalty of perjury:

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes

6

the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true. Request for Judicial Notice, Ex. E, Application [RFJN 297-298]).[2]

Unless the laws of physics cease to exist in the world of trademarks, Mr. Robinson cannot possibly explain why in 1992, 2004, 2008, February 2012, June 2012, and June 2013, Mr. Wilcox was a co-owner of the common law trademarks, but in April 2012, Mr. Robinson was the sole owner.[3]  This may explain the difficultly he has had in developing a coherent theory of his case.

### D.       The Final Pretrial Conference

At the Final Pretrial Conference on May 13, 2026, Mr. Robinson committed to a theory as to how and when he acquired Mr. Wilcox's trademark rights: Mr. Wilcox allegedly abandoned his trademark rights by "losing interest" in the business aspects of the band and by refusing to help finance a bond ordered by the Court in the 2013 litigation to secure a preliminary injunction that was granted in June 2013.  As counsel discussed with the Court at the Final Pretrial Conference:

---

[2] The USPTO, on June 14, 2016, issued a certificate of registration for Reg. No. 5,131,332 for The Pharcyde based on Robinson's trademark application, omitting any reference to Mr. Wilcox. Request for Judicial Notice, Ex. D, Certificate of Registration [RFJN 291]).

[3] Given the Court's occasional references to movies during hearings on this matter, a paraphrase of Joe Pesci's cross-examination regarding the length of time it takes to prepare "non-magic grits" in "My Cousin Vinny" seemed appropriate.

**THE COURT:** Are you going to tell them that the filing of the lawsuit is when Mr. Wilcox's rights became extinguished, or is it when he failed to pay the bond that his rights became extinguished? Which is it? You don't go to a jury and say, here's a pile of exhibits, you all determine when he extinguished his rights. You present the evidence and you argue to them, we believe that he extinguished his rights as of this date --

**MR. DUCKETT:** Okay. Thank you --

**THE COURT:** -- what is that date and what is the evidence that you're presenting?

**MR. DUCKETT:** October 22nd, 2013 on the bond
(Request for Judicial Notice, Exhibit D, Transcript of May 13, 2026 Final Pretrial Conference at 39:25-40:12 [RFJN 231-2])

In addition:

**THE COURT:** Abandonment. Are you going to claim that he lost his rights?

**MR. DUCKETT:** In 2012.

**THE COURT:** Before then --

**MR. DUCKETT:** Great question.

**THE COURT:** Before then then he is a common owner of the mark --

**MR. DUCKETT:** Yes.

**THE COURT:** -- before 2012.

**MR. DUCKETT:** Yes, Your Honor.

**THE COURT:** Okay. Mark what you just said and don't contradict yourself, okay. Between 2008 and 2012 there is no evidence by which you are going to be able to show that he was not a co-owner of the mark.
(Request for Judicial Notice, Exhibit D, Transcript of May 13, 2026 Final Pretrial Conference at 35:5-18 [RFJN 226])[4]

---

[4] See also, Transcript at 26:18-20:

## III.    LEGAL ARGUMENT

The Court in *Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131 (C.D. Cal. 2004), held that a court may grant partial summary judgment to determine "before the trial that certain issues shall be deemed established in advance of the trial.  The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *Peliculas*, 302 F. Supp. 2d at 1131.

---

**THE COURT:** Well, I don't care what you want to do, do you have evidence to suggest that they are not co-owners as of 2008?

**MR. DUCKETT:** No, Your Honor.
(Request for Judicial Notice, Exhibit D, Transcript of May 13, 2026 Final Pretrial Conference at 2618-21 [RFJN 218])

See also Transcript at 36:16-24:

**THE COURT:** When did Wilcox lose his right to the common law trademark --

**MR. DUCKETT:** When --

**THE COURT:** -- to Far Side [sic], according to your evidence?

**MR. DUCKETT:** When he had the option to pay a bond.

**THE COURT:** Which was when?

**MR. DUCKETT:** 2013.
(Request for Judicial Notice, Exhibit D, Transcript of May 13, 2026 Final Pretrial Conference at 36:16-24 [RFJN 228])

### A.    As a Matter of Law, the Issue of "Priority of Use" Should Be Summarily Adjudicated Against Mr. Robinson.[5]

In *Sengoku Works Ltd. v. RMC International, Ltd.,* 96 F. 3d 1217 (1996), the Court held:

> It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.  *Sengoku,* 96 F. 3d at 1291.

Mr. Robinson was not the first person to use The Pharcyde in the sale of goods and services.  The Certificate of Registration for The Pharcyde states that the "first use in commerce" was November 24, 1992.  (Request for Judicial Notice, Ex. D, RFJN291) **This was the date that the first The Pharycde album was released,** an album containing the performances and work of each of the four Original Members of the band. (Wilcox Declaration, ¶ 2).   Indeed, the "specimen" submitted to the USPTO was, as described in the application, a "[t]our poster promoting lives performances by The Pharcyde on January 22, 2011." (Request for Judicial Notice, Ex. E, RFJN295)  At the first "The Pharcyde" concert, each of the Original Members performed as "The Pharcyde." (Wilcox Declaration ¶ 3).  As a matter of law, Mr. Robinson was not the "first to actually use the mark in the

---

[5] Mr. Robinson's claim that Mr. Wilcox abandoned his common law trademark rights could make issues relating to the "original" owners of the trademark rights less important than they might otherwise be.  However, to the extent that Mr. Robinson in any way seeks to claim that his USPTO Trademark Registration confers to him any presumption of ownership, it is well-established that a non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration.  *Vuitton et Fils S.A. v. J. Young Enterprises,* 644 F.2d 769, 775-76 (9th Cir. 1981).  Thus, if Mr. Wilcox can show that Mr. Robinson did not use the mark in commerce first, Mr. Robinson cannot be the sole owner of the trademark absent some transfer or forfeiture of Mr. Wilcox's rights.  While Mr. Wilcox's claim that Mr. Robinson's USPTO filings were fraudulent may not be an appropriate issue for summary adjudication, there are no material disputed facts relating to priority of use and abandonment.

sale of goods or services." This issue should be summarily adjudicated in Mr. Wilcox's favor and against Mr. Robinson.

**B.** **The Issue Of Whether Mr. Wilcox Abandoned His Trademark Rights As Of October 22, 2013 (The Bond Payment Date) Should Be Summarily Adjudicated in Mr. Wilcox's Favor.**

As indicated above, at the Final Pretrial Conference, Mr. Robinson's counsel insisted that Mr. Wilcox abandoned his rights in the common law The Pharcyde trademarks as of October 22, 2013, when he failed to contribute to the purchase of a bond relating to a Preliminary Injunction. Now that Mr. Robinson has committed to that date, the question is, what evidence does Mr. Robinson have to prove his abandonment theory. This very question was submitted to Mr. Robinson in Mr. Wilcox's First Set of Special Interrogatories. In Response to Interrogatory No. 3, asking Mr. Robinson to "State all facts that relate to Defendant's abandonment or termination of his trademark rights in and to THE PHARCYDE Marks," after asserting boilerplate objections, Mr. Robinson responded:

> At all relevant times hereto, Robinson owned and never assigned or otherwise contracted away from or abandoned any rights in and to THE PHARCYDE Marks. Robinson is the sole owner of THE PHARCYDE Marks, as Wilcox affirmed in 2012 when he agreed to use THE PHARCYDE Marks pursuant to a revocable license controlled solely by Robinson. (Michel Decl., Ex. A)

In his Response to Interrogatory No. 4, when asked to "State all facts that relate to Plaintiff's sole ownership of THE PHARCYDE Marks, after asserting the same boilerplate responses, Mr. Robinson responded with the same language used in Response to Interrogatory No. 3:

> At all relevant times hereto, Robinson owned and never assigned or otherwise contracted away from or abandoned any rights in and to THE PHARCYDE Marks.  Robinson is the sole owner of THE PHARCYDE Marks, as Wilcox affirmed in 2012 when he agreed to use THE PHARCYDE Marks pursuant to a revocable license controlled solely by Robinson. (Michel Decl., Ex. B)

These responses contradict Mr. Robinson's current position in at least two ways: (1) Mr. Robinson seems to be claiming that he was always the sole owner of The Pharcyde trademarks, in direct contradiction to the position taken at the Final Status Conference (and in the relevant documents/pleadings identified above); and (2) the "facts" relating to Mr. Wilcox's abandonment consisted solely of Mr. Wilcox's supposed oral agreement that he would use the trademarks "pursuant to a revocable license."  No mention of a failure to pay for a bond in 2013.  No mention of the supposed "beginning" of the abandonment in 2008/2009.  No mention of anything other than a supposed agreement between Mr. Robinson and Mr. Wilcox sometime in 2012.

The Court in *eMachines, Inc. v. Ready Access Memory, Inc.*, 2001 WL 456404 (C.D. Cal. 2001) held:

> As trademark abandonment is an affirmative defense, Defendant bears the burden of establishing that no reasonable trier of fact could find for Plaintiff. The burden then shifts to Plaintiff to refute abandonment. Should the Court find that Defendant has not carried its burden, then the abandonment defense is eliminated. *See Vernon v. Heckler*, 811 F. 2d. 1274, 1278 (9th Cir. 1987) (holding partial summary judgment can be used by the Court to dispose of affirmative defenses).  *eMachines*, at *4.

Here, it is Mr. Robinson that is claiming that Mr. Wilcox abandoned his trademark rights.  He bears the burden of establishing that no reasonable trier of fact could find for Mr. Wilcox.  He has not, and cannot, meet this burden.

Under the Lanham Act, a mark can only be deemed "abandoned" when either of the following occurs: "(1) [w]hen its use has been discontinued with

intent not to resume such use," or "(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." 15 U.S.C. 1127.  As a matter of law, Mr. Robinson's abandonment claim fails on both possible justifications.

### 1.    <u>Abandonment Through Discontinued Use With Intent Not To Resume</u>.

There is no evidence to support a claim that Mr. Wilcox "discontinued" his use of The Pharcyde trademarks prior to October 22, 2013.  Any such assertion would be demonstrably false:  As he states in his Declaration, Mr. Wilcox performed as a member of The Pharcyde in concerts from 1992 to, at a minimum, 2020. (Wilcox Decl., ¶ 3).[6]  Mr. Wilcox has collected royalties on recordings and merchandise sold relating to The Pharcyde from 1992 to the present.  (Wilcox Decl., ¶ 5).  Mr. Wilcox has also confirmed in his Declaration that at no time did he have any intention to abandon his rights relating to the band name "The Pharcyde."  (Wilcox Decl., ¶ 4)

Part of the problem in this case is Mr. Robinson's apparent belief that "abandonment" of a trademark can be proved by the failure to do one thing that he contends was important to maintain the value of the trademark.  This is not the law.  In *Herb Reed Enterprises v. Florida Entertainment Management, Inc.,* 736 F. 3d 1239 (9th Cir. 2013), the Ninth Circuit held that "[a]bandonment of a trademark, being in the nature of a forfeiture, must be strictly proved."[7]  The Court continued:

---

[6] Mr. Robinson's recent post-Final Pretrial Conference claim that Mr. Wilcox abandoned his trademark rights in the late 2010s-early 2020s is addressed below.

[7] The Court in *Electro Source, LLC v. Bradness-Kalt-Aetna Group, Inc.*, 458 F. 3d 931 (9th Cir. 2006) explained:

> The Ninth Circuit has not spoken as to what "strictly proved" means, but at least one district court has required "clear and convincing evidence" of abandonment.  *eMachines,*

> Non-use requires complete cessation or discontinuance of trademark use,where "use" signifies any use in commerce and includes the placement of a mark on goods sold or transported. Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith. *Herb Reed Enterprises*, 736 F. 3d at 1247-48.

In an examination of the issue of abandonment relating to the name of the musical group "The Platters", the *Herb Reed* Court found:

> HRE presented evidence that, despite the 1987 settlement, it continued to receive royalties from the sale of The Platters' previously recorded material. The district court permissibly relied on the declaration of HRE's general manager that "[s]ince ... approximately 1953, Reed continuously received royalties from Platters recordings, including during the time period after the 1987 Stipulation was signed and after the 2001 Injunction." The declaration further indicates that HRE received and continues to receive royalties from domestic and international sales and names a range of companies that pay royalties for the use of The Platters' original recordings in other compilations, television ads, movies, or other media. The receipt of royalties is a genuine but limited usage of the mark that satisfies the "use" requirement, especially when viewed within the totality of the circumstances—namely, that Reed was constrained by the settlement. Receipt of royalties certainly qualifies as placement of "The Platters" mark on goods sold, and supports the finding that there was no abandonment. *See Marshak v. Treadwell*, 240 F. 3d 184, 199 (3d Cir. 2001) ("A successful musical group does not abandon its mark unless there is proof that the owner ceased to commercially exploit the mark's secondary meaning in the music industry.") (internal quotation marks and citations omitted). *Herb Reed Enterprises*, 736 F. 3d at 1248.

As a matter of fact and law, Mr. Robinson cannot prove that Mr. Wilcox abandoned his trademark rights with an intent not to resume.

---

*Inc. Ready Access Memory, Inc.*, 2001 WL 456404, at*5 (C.D. Cal. 2001).  *Electro Source*, 458 F. 3d at fn. 2.

*See also Marketquest Group, Inc. v. BIC* Corporation, 316 F. Supp. 3d 1234, at 1281 ("It is *not* the law that the slightest cessation of use causes a trademark to roll free, like a fumbled football, so that it may be pounced on by any alert opponent.").

## 2.     Abandonment By Causing The Mark to Become Generic

If Mr. Robinson can find legal authority for the proposition that the failure to pay for a bond against an infringer is proof of abandonment under United States trademark law, Mr. Wilcox will reconsider his position.  (Mr. Robinson, of course, would still have to explain his numerous contradictions of his theories).  Mr. Robinson will not be able to find that legal authority.  Financial contributions do not prove ownership in the same manner that a lack of financial contribution does not prove non-ownership.  *See Mitigation Technologies, Inc. v. Pennartz*, 2015 WL 12656936, at fn. 3 (C.D. Cal. 2015)(rejecting claim that financial contribution to a patent prosecution proceeding conveyed any ownership interest.).

Similarly, Mr. Robinson has no evidence (and he does not attempt to claim) that The Pharcyde name has become generic.  The Court in *Neo4j, Inc. v. Pure Think, LLC*, 480 F. Supp. 3d 1071 (N.D. Cal. 2020) held:

> Requiring a trademark owner to police the quality of goods produced by a third party who has no right to use the trademark would undermine the well-settled rule that a trademark owners failure to sue potential infringers does not constitute abandonment.  *Neo4j, Inc.*, 480 F. Supp. 3d at 1078.

Without making it explicit, Mr. Robinson seems to be trying to argue that Mr. Wilcox's failure to "participate" in the 2013 litigation is somehow similar to a "naked license," where a trademark owner fails to exercise sufficient quality control over its licensees.  This argument assumes (a) the existence of a trademark license, which is not alleged (*See Neo4j, Inc.*, 480 F. Supp. 3d at 1078 ("the Court is not aware of any [legal authority] in which a trademark owner was found to have engaged in naked licensing where no trademark license existed."); and (b) the failure to exercise quality control has resulted in the trademark becoming generic. *See San Diego Comic Convention v. Dan Farr Prods.,* 2017 WL 42270000, at *12 (S.D. Cal. Sept. 22, 2017), cited by *Neo4j, Inc.*, 480 F. Supp 3d at 1078("[D]espite Defendants' attempt to argue abandonment through through

party use or failure to police, these arguments are unquestionably meritless as Defendants have not proven that Plaintiff's mark is generic.").

At a minimum, Mr. Robinson must identify the **specific** acts that he believes constitute abandonment and then identify valid legal authority describing those actions to be legally sufficient to justify an owner (or co-owner) to be found to have abandoned his trademark rights.  Given the undisputed facts in this case and the relevant case law law, he will not be able to do so.  As such, his claim that Mr. Wilcox is no longer a co-owner due to "abandonment" should be summarily adjudicated against him.

## IV.    <u>CONCLUSION, BUT, UNFORTUNATELY, CONFUSION</u>

This is an argument that should not have to be made.  Repeatedly, at the Final Pretrial Conference, Mr. Robinson insisted that Mr. Robinson's trademark abandonment occurred (or at least "culminated") in 2013.  Despite this, for some unknown (and unjustified) reason, on May 22, 2026, Mr. Robinson filed a Motion to "Amend Complaint, Jury Instructions and Plaintiff's Separately Filed Pretrial Conference." [Dkt. 130].  In that Motion, Mr. Robinson seeks to excise the language in the Complaint and his proposed Jury Instructions regarding his previously-alleged assignment claim, perhaps forgetting that deleting it from his complaint and jury instructions will not erase the fact – as cited above -- that Mr. Robinson relied on that same theory in his Responses to Interrogatories.  While there is so much wrong with the Motion (factually, legally and procedurally), the issue of concern for **this** Motion is his claim that granting his Motion will:

> better focus the jury on the relevant issues:  Robinson's ownership, Defendant's alleged infringement, and whether **Wilcox abandoned, waived, or forfeited any claimed continuing rights.** Dkt. No. 130 at 13:4-6 (emphasis added)[8]

---

[8] *See also* Motion, at 10:17-20 [Dkt. No. 130]("Plaintiff is seeking amendment to avoid litigating a disputed assignment theory that is unnecessary to Plaintiff's claims and to proceed under the more accurate theory supported by Wilcox's own testimony:  abandonment, waiver, acquiescence, and failure to act as an owner.")

He also raises the argument that "abandonment" can be proved by Wilcox's post-2013 actions:  Wilcox's alleged "failure to challenge Robinson's registration for years, and Wilcox's later competing use of the mark."  Motion, at 10:24-27 [Dkt. 130].  These, of course, are theories not identified in responses to Interrogatories, and not raised in response to direct questions from the Court at the Final Pretrial Conference.  And the alleged acts (or inactions) are not examples of abandonment.  As the Court repeatedly told counsel, abandonment, waiver, and forfeiture are different, distinct affirmative defenses.  Maybe Mr. Robinson is attempting (but failing) to articulate an unclean hands or estoppel defense.  But "acquiescence"?  "Failure to act like an owner"?  "Competing use of the mark"?  If Mr. Wilcox is a co-owner, how is his use a "competing use"?

The Court directed Mr. Wilcox to file a Motion for Partial Summary Judgment in response to Mr. Robinson's shift from an assignment theory to an abandonment theory.  This Motion addresses that issue.  But Mr. Robinson appears committed to pursuing a "whack-a-mole" strategy, where, when one position is disproved, another pops up.  If the abandonment theory identified at the Final Pretrial Conference is exchanged for (or "supplemented by") a different theory unarticulated and undeveloped in Mr. Robinson's pre-trial documents, Mr. Wilcox respectfully requests the opportunity to address those issues in, if necessary and appropriate, additional motion practice.

This simple fact of this matter is that, no matter what label Mr. Robinson chooses to apply to his argument, the relevant case law and the Undisputed Facts in the Separate Statement should be sufficient to prove Mr. Wilcox's position:  he was an original member of the band; Mr. Robinson repeatedly described him as a co-owner; he continued to perform as a member of The Pharcyde; he continued to

17

collect royalties as a member of The Pharcyde.  As he acknowledges in his Declaration, Mr. Wilcox performed for a limited period of time with the other Original Members (except Mr. Robinson) under the name "The Far Side (formerly of The Pharcyde)" before reverting back to performing as "The Pharcyde." Mr. Robinson has no legal authority to suggest that there is any disputed material fact that would somehow change the fact that, as a matter of law, Mr. Wilcox was a co-owner of The Pharcyde common-law trademarks, and nothing he has done since the band began performing justifies Mr. Robinson's claim that Mr. Wilcox has somehow abandoned, forfeited, acquiesced, waived, or any other legal-sounding word his rights as a co-owner.  Mr. Wilcox respectfully requests that Partial Summary Judgment be granted.

Dated:  May 26, 2026              The Law Office of Hayes F. Michel, PC


                                  /s/Hayes Michel

                                  Hayes Michel, Attorney for Imani Wilcox

.

18

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Certificate of Compliance

Case Number No.: 2:23-cv-08517-SK

I am the attorney for Imani Wilcox. Using the word-count program on my computer, I can state that this brief contains no more than 5969 words, excluding the items exempted by the Local Rules.

I certify that this brief complies with the word limit of L.R. 11-6.1.

Dated:  May 26, 2026                    __/s/Hayes Michel

                                                    Hayes Michel

19