HAYES F. MICHEL (SBN 141841)
THE LAW OFFICE OF HAYES F. MICHEL, PC
1880 Century Park East, Suite 1011
Los Angeles, California 90067
Tel: (310) 277.7342
Email: hayes@hfmichel.law

Attorneys for Defendant
IMANI WILCOX

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMYE ROBINSON, p/k/a BOOTIE BROWN, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>IMANI WILCOX, p/k/a IMANI, an individual; and DOES 1 through 20,<br><br>        Defendants. | Case No.: 2:23-cv-08517-SK<br><br>[Hon. Steve Kim]<br><br>**IMANI WILCOX'S REPLY TO ROBINSON'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  July 8, 2026<br>Time: 10:00 a.m.<br>Department: 504<br><br>Action Filed: October 9, 2023 |

## TABLE OF CONTENTS

I.  <u>INTRODUCTION/OVERVIEW</u>………………………………………..1

    **Fundamental Mistake No. 1:  Mr. Robinson's Opposition mistakenly identifies (or intentionally distorts) the explicit issues sought to be adjudicated…………………………………1**

    **Fundamental Mistake No. 2:  Mr. Robinson has now "abandoned" the position he took at the Final Pretrial Conference. ……………………………………………….. 3**

    **Fundamental Mistake No. 3: The Opposition evidences a drastic misunderstanding of the concept of trademark abandonment and the erroneous treatment of "abandonment, waiver, forfeiture, estoppel, and control issues" (Opposition, 16:28-17:1 [Dkt. No. 135]) as interchangible.  …………...………4**

II.    <u>THE "PRIORITY OF USE" ISSUE SHOULD BE SUMMARILY ADJUDICATED IN MR. WILCOX'S FAVOR</u>………………………………………....9

III.    <u>CONCLUSION</u>…………………………………………....…10

## TABLE OF AUTHORITIES

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.,*
     458 F. 3d. 931 (9th Cir. 2006)…………………………………………3, 6

*FreecycleSunnyvale v. Freecycle Network,*
     626 F. 3d 509 (9th Cir. 2010)……………………………………….7

*Herb Reed Enterprises v. Florida Entertainment Management, Inc.,*
     736 F. 3d 1239  (9th Cir. 2013)…………………………………..6

*Marketquest Group, Inc. v. BIC Corporation,*
     316 F. Supp. 3d 1234 (S.D. Cal. 2018)…………………………8

*Sengoku Works, Ltd. V. RMC Intern., Ltd.,*
     96 F. 3d 1217 (9th Cir. 1996)……………………………………9, 10

## I. __INTRODUCTION/OVERVIEW__

Mr. Robinson has made at least three fundamental mistakes that demonstrate either bad faith or a complete misunderstanding of Mr. Wilcox's Motion and the matters discussed at the Final Pretrial Conference.

**Fundamental Mistake No. 1:  Mr. Robinson's Opposition mistakenly identifies (or intentionally distorts) the explicit issues sought to be adjudicated.** The numerous misstatements of law and fact in Mr. Robinson's Opposition brief start in his opening paragraphs:

> Defendant Imani Wilcox cannot prevail on this Motion. His Motion asks the Court to decide, as a matter of law, the very issues that must be tried: who owns the present enforceable rights in THE PHARCYDE mark, whether Wilcox abandoned, waived, forfeited, or is estopped from asserting any continuing rights, and whether Wilcox can overcome the statutory presumption created by Robinson's federal registration. (Opposition, at 1:1-7 [Dkt. No. 135])

> ****

> Wilcox's Motion is therefore built on the wrong premise. He attempts to convert 1992 group history, legacy recordings, royalties, and old litigation statements into an automatic adjudication of present co-ownership. (Opposition, at 1:21-23[Dkt. No. 135])

This is astoningly wrong.

Mr. Wilcox is not asking the Court to decide who owns "the present enforceable rights" in The Pharcyde mark.  He is not asking the Court to decide whether Wilcox abandoned, waived, forfeited, or is estopped from asserting any continuing rights.  And, he is not attempting to convert "group history, legacy recordings, royalties, and old litigation statements" into an "automatic adjudication of present co-ownership."  Instead, as is specified in the Notice of Motion and throughout the Moving Papers, Mr. Wilcox is seeking to have the following two issues adjudicated:

> Issue 1: As a Matter of Law, the Issue of "Priority of Use" Should Be Summarily Adjudicated Against Mr. Robinson; and
>
> Issue 2: The Issue Of Whether Mr. Wilcox Abandoned His Trademark Rights As Of October 22, 2013 (The Bond Payment Date) Should Be Summarily Adjudicated in Mr. Wilcox's Favor.

Mr. Robinson's mis-reading of the Motion pervades all of the papers filed in Opposition to the Motion.  This can be seen most easily from a review of Mr. Robinson's Response to Mr. Wilcox's Statement of Undisputed Facts [Dkt. No. 139].  He concedes that Fact Nos. 1-5, 9-10, and 13-14 are undisputed, but argues that each of those "facts" do not, in and of itself, do not prove current ownership, which is, as explained above, not the focus of the current Motion.  Mr. Robinson purports to dispute Fact Nos. 6-8, 11-12,15, but, again, fails to actually dispute the fact, instead only insisting that the fact does not prove what Mr. Robinson thinks Mr. Wilcox is trying to prove. [1]

---

[1] For example, Undisputed Fact No. 1 states: "On November 24, 1992, the band The Pharcyde, consisting of Romye Robinson, Trevant "Slimkid3" Hardson, Derrick "Fatlip" Stewart, and Imani Wilcox, released its first album for sale to the public, Bizarre Ride II The Pharcyde."   Mr. Robinson's Response to Fact No. 1 is:

> UNDISPUTED only that the first album was released in 1992 by the original group. DISPUTED to the extent Wilcox uses this historical fact to establish present ownership, priority against Robinson, or lack of abandonment.  Historical participation in the group does not defeat Robinson's federal registration or the statutory presumption of ownership under 15 U.S.C. §§  1057(b),  1115(a).  The relevant disputed issue is whether Wilcox retained any present rights after Robinson filed the USPTO application, Robinson posted the bond to protect the mark, Robinson obtained Registration No. 4,975,747, and Wilcox failed to timely challenge Robinson's  registered ownership.

What Mr. Robinson contends is the "relevant disputed issue" may be relevant to Mr. Robinson, but it is not relevant to the Motion before the Court. Mr. Robinson's purported "disputes" of certain facts is equally erroneous. For example, Undisputed Fact No. 6 states: "At the first The Pharcyde concert, each of the Original Members performed as The Pharcyde." Mr. Robinson's Response is:

> DISPUTED to the extent based solely on Wilcox's self-serving declaration and offered to establish present ownership or non-abandonment. Even assuming the original members performed together at the first concert, that does not prove Wilcox presently owns the mark, has standing, or did not abandon/waive any claimed rights. Historical use does not immunize a claimant from later abandonment, waiver, estoppel, or loss of rights through failure to control and police the mark.

Again, Mr. Robinson is not disputing the actual fact.  He is not identifying evidence that disputes the fact.  He is making claims that the facts are irrelevant, but they are only potentially irrelevant to the erroneous version of the Motion Mr. Robinson apparently believes he is opposing.

Simply put, Mr. Robinson has failed to provide the Court with any evidence or legal authority that would prevent the Court from summarily adjudicating the issues that the Motion actually seeks to have adjudicated.[2]

**Fundamental Mistake No. 2:  Mr. Robinson has now "abandoned" the position he took at the Final Pretrial Conference.**  At the Final Pretrial Conference, Mr. Robinson announced that he was no longer proceeding on a theory that Mr. Wilcox had assigned his trademark rights to Mr. Robinson (the position asserted in his Complaint and his Responses to Interrogatories), but instead was now going to argue that Mr. Wilcox had abandoned his trademark rights.  The Court specifically asked counsel for the date of Mr. Wilcox's abandonment and counsel insisted that the date was October 22, 2013, the date that Mr. Robinson and not Mr. Wilcox paid for a bond ordered by the Court in the 2013 litigation in which Mr. Robinson and Mr. Wilcox were co-plaintiffs.[3]

At the Final Pretrial Conference, the Court vacated the trial date and set a briefing schedule for a Motion for Partial Summary Judgment.  The Court's stated theory was that, given Mr. Robinson's representations, the issue of whether Mr. Wilcox abandoned his rights as of October 22, 2013 could potentially be determined by motion.

---

[2] Mr. Robinson's repeated assertion that abandonment cannot be decided on summary judgment is false.  *See, e.g.*, *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F. 3d. 931 (9th Cir. 2006).

[3] *See, e.g.,* Transcript of Final Pretrial Conference at 39:25-40:12:

> THE COURT: Are you going to tell them that the filing of the lawsuit is when Mr. Wilcox's rights became extinguished, or is it when he failed to pay the bond that his rights became extinguished? Which is it? You don't go to a jury and say, here's a pile of exhibits, you all determine when he extinguished his rights. You present the evidence and you argue to them, we believe that he extinguished his rights as of this date --
>
> MR. DUCKETT: Okay. Thank you --
>
> THE COURT: -- what is that date and what is the evidence that you're presenting?
>
> MR. DUCKETT: October 22nd, 2013 on the bond.
> Transcript of May 13, 2026 Final Pretrial Conference at 39:25-40:12 [Dkt. No. 128]

3

What has now happened is that Mr. Robinson has shifted positions again. Instead of an abandonment date in 2013, Mr. Robinson is now claiming that Mr. Wilcox abandoned his trademark rights by failing to "oppose, cancel, or timely challenge Robinson's registration." (Motion, 2:10-11). The registration was accepted in 2016, meaning that the date of October 22, 2013 was no longer critical. He now asserts that the Court to "consider the totality of Wilcox's conduct [which] includes refusal to finance enforcement, failure to participate meaningfully in protection of the mark, failure to challenge Robinson's federal registration, lack of control over merchandise and websites, and later attempts to use or monetize the mark despite Robinson's registered rights." (Motion, 11:6-10). This "totality" of conduct involves events post-2013.

Mr. Robinson does not even attempt to explain his disregard for his prior representations to the Court. He is acting as though the Final Pretrial Conference either did not take place or did not matter. His cavalier disregard of his representations to Court demonstrates bad faith and should not be permitted.

**Fundamental Mistake No. 3: The Opposition evidences a drastic misunderstanding of the concept of trademark abandonment and the erroneous treatment of "abandonment, waiver, forfeiture, estoppel, and control issues" (Opposition, 16:28-17:1 [Dkt. No. 135]) as interchangible.** Mr. Robinson Declaration states:

> Based on the evidence developed in this case, including Wilcox's deposition testimony, the facts support that Wilcox abandoned, waived, forfeited, or is estopped from asserting any continuing ownership rights in THE PHARCYDE mark. He walked away from the mark, especially when he started using his own mark by performing as "Far Side formerly of The Pharcyde," which was intended to confuse promoters and booking companies. (Robinson Decl., ¶18 [Dkt. No. 136]

This treatment of these potential affirmative defenses as identical is so incorrect as to border on disturbing. (It should also be noted that Mr. Robinson has not sought to include a Proposed Jury Instruction for estoppel or waiver in his Motion to

Amend Jury Instructions).  Mr. Robinson seems to define "abandonment" as a general dictionary might define the term.  He asserts (twice) "a jury could conclude that Wilcox refused those burdens while Robinson undertook them."  (Opposition at 5:3-5; 11:23-24 [Dkt. No. 135].  *See also* Opposition at 1:26-7 ("he refused the burdens of ownership when protection of the mark mattered most"); Opposition at 4:1-2 ("Wilcox refused the burdens of ownership").  He asks the Court to:

> consider the totality of Wilcox's conduct. That totality includes refusal to finance enforcement, failure to participate meaningfully in protection of the mark, failure to challenge Robinson's federal registration, lack of control over merchandise and websites, and later attempts to use or monetize the mark despite Robinson's registered rights. (Opposition, at 11:6-11 [Dkt. No. 135])[4]

**There is a basic problem with this request:  There is no "totality of conduct" standard for "abandonment" and Robinson cites no legal authority to support his "totality theory".**  Instead, he claims (without legal authority) that a jury might be able to find abandonment based on his version of the facts.  That assertion has no merit.  An owner (or co-owner) does not lose trademark rights because maybe the "totality of circumstances" shows that a party allegedly "refused the burdens of ownership."  Instead, the requirements to prove abandonment are explicitly set forth in 15 USC §1127:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
>
>> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

---

[4] *See also* Opposition, at 2:21-23 (Moving Papers' cited authorities "address abandonment theories different from Robinson's 'totality of conduct' theory").

> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

One can easily recognize that "abandonment" under trademark law is not synonymous with "refusing the burdens of ownership."

As a matter of law and undisputed material facts, Mr. Robinson has not proved (and cannot prove) that, as of the "bond payment date", Mr. Wilcox did had abandoned his trademark rights.  The Ninth Circuit, in *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F. 3d. 931 (9th Cir. 2006), held:

> [A]s a threshold matter, abandonment requires *complete* cessation or discontinuance of trademark  use. *See §1127*; *see also Doeblers' Pa. Hybrids, Inc. v. Doeblers*, 442 F. 3d. 812, 823 (3d Cir. 2006) (holding that a trademark  was not abandoned  because "[t]he simple fact is that the use of [the trademark ] never ceased").  Our decision in *Carter-Wallace, Inc. v. Procter & Gamble Co.* offers a bright line rule: "Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." 434 F. 2d 794, 804 (9th Cir. 1970).

There is no claim (and no evidence supporting a claim) that Mr. Wilcox completely ceased or discontinued his use of The Pharcyde Marks as of October 2013.  On the other hand, the Undisputed Facts prove that a cessation **did not** take place:

> 7.    The Pharcyde has released albums and musical sound recordings over the last 30 years, and Mr. Wilcox performed on those recordings.[5]

---

[5] The Ninth Circuit in *Herb Reed Enterprises v. Florida Entertainment Management, Inc.,* 736 F. 3d 1239, 1247-48 (9th Cir. 2013), held that:

> Receipt of royalties certainly qualifies as placement of "The Platters" mark on goods sold, and supports the finding that there was no abandonment. *See Marshak v. Treadwell*, 240 F. 3d 184, 199 (3d Cir.2001) ("A successful musical group does not abandon its mark unless there is proof that the owner ceased to commercially exploit the mark's secondary meaning in the music industry.")
> (internal quotation marks and citation omitted).

8.  From the release of the first album to the present, The Pharcyde's music and entertainment products have been distributed and sold to the public and Wilcox has received royalties from the sale of those recordings and merchandise.[6]

13.  In June 2013, Robinson and Wilcox filed a lawsuit against Delicious Vinyl, Hardson, and Stewart. The verified complaint stated that Robinson and Wilcox had a pending trademark registration and common law rights in the Pharcyde mark.

15.  Wilcox has performed in concert as a member of The Pharcyde continuously from 1992 through the present, except COVID and a brief period in the early 2020s when Hardson, Stewart, and Wilcox performed as "The Far Side (formerly of The Pharcyde)."[7]

Given these facts, Mr. Robinson cannot satisfy the first prong of the definition of "abandonment." (He has not attempted to prove that Mr. Wilcox evidenced an "intent not to resume.").

As to the second prong, Mr. Robinson is correct when he asserts:

> Ninth Circuit law also recognizes abandonment through lack of quality control or uncontrolled licensing. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F. 3d 589, 596-98 (9th Cir. 2002); *FreecycleSunnyvale v. Freecycle Network*, 626 F. 3d 509, 515-18 (9th Cir. 2010) (Opposition, 7:17-20[Dkt. No. 135]).

What Mr. Robinson does not acknowledge, however, is that he has not introduced any evidence that he licensed the trademark to Mr. Wilcox.[8] Without a license, there can be no "naked licensing." *FreecycleSunnyvale*, 626

---

[6] "It is *not* the law that 'the slightest cessation of use causes a trademark to roll free, like a fumbled football, so that it may be pounced on by any alert opponent .'" *Marketquest Group, Inc. v. BIC Corporation*, 316 F. Supp. 3d 1234 (S.D. Cal. 2018).

[7] Mr. Robinson claims that the "only" evidence to support this fact is Mr. Wilcox's "self-serving" declaration. Even if that characterization had any legal merit, Mr. Robinson does not deny that Mr. Wilcox has continued to perform as a member of "The Pharcyde" for 30 years.

[8] Mr. Robinson has also insisted that he is no longer alleging that Mr. Wilcox assigned his rights to Mr. Robinson and then Mr. Robinson licensed the right to use the The Pharcyde name in concert. And, even if he were still alleging this, he has introduced no evidence to support the claim.

7

F. 3d, at 516. ("When deciding summary judgment on claims of naked licensing, we first determine whether the license contained an express contractual right to inspect and supervise the licensee's operations.")  In addition, it is not sufficient for Mr. Robinson to claim that there was a lack of "quality control", especially given that he provides no evidence to support that claim.[9]  Instead he must prove that the lack of "quality control" lead to the mark "losing significance as a mark."  Without that evidence, Mr. Robinson cannot prove the second prong of the abandonment test.  In addition, the undisputed evidence is that Mr. Wilcox <u>was</u> a plaintiff in the 2013 litigation. (Undisputed Fact. No. 13) and that, in 2012, a lawyer representing Mr. Wilcox and Mr. Robinson was sending cease and desist letters in an effort to prevent unauthorized uses of The Pharcyde name.  (Undisputed Fact. No. 12).[10]

Mr. Wilcox has demonstrated that the undisputed facts prove that there was no abandonment of trademark rights as of October 22, 2013.[11]  As a result, the Court should summarily adjudicate Issue No. 2 in Mr. Wilcox's favor.[12]

---

[9] The Court in *FreecycleSunnyvale* ruled at 626 F. 3d, at 514:

> We have held that the proponent of a naked license theory of trademark abandonment must meet a "stringent standard of proof." *Barcamerica*, 289 F. 3d at 596; *see also Prudential Ins. Co. of Am. V. Gibraltar Fin. Corp. of Cal.*, 694 F. 2d 1150, 1156 (9th Cir. 1982) ("Abandonment of a trademark, being in the nature of forfeiture, must be strictly proved."); *Edwin K. Williams & Co. v. Edwin K Williams & Co. E.*, 542 F. 2d 1053, 1059 (9th Cir. 1976)("[A] person who asserts insufficient control [of a trademark] must meet a high burden of proof.").

[10] As for the repeated argument that Mr. Wilcox admitted that he did not know about the 2013 litigation, that argument is disproved by Mr. Robinson's Additional Fact No. 5 ("Wilcox admitted the prior lawsuit concerned whether Hardson and Stewart had the right to use The Pharcyde name in performances") and Additional Fact No. 6 ("Wilcox read the injunction language restraining Delicious Vinyl, Hardson, and Stewart from using The Pharcyde mark or confusingly similar words and phrases.").  Further, Mr. Robinson cites no legal authority regarding an co-owner's knowledge regarding actions taken on his behalf to protect a trademark.

[11] The "elephant in the room" question is, what happens now that Mr. Robinson has now attempted to assert that, maybe, the abandonment happened after 2013?  First, this is only an issue because of Mr. Robinson's bad faith:  he committed to a position at the Final Pretrial Conference; based on that position, the Court set a briefing schedule for a Partial Summary Judgment Motion; and Mr. Wilcox limited his Motion to the claim committed to by Mr. Robinson at the Final Pretrial Conference.  Second, while it is true that the Notice of Motion seeks adjudication of the abandonment issue as of 2013, it should be noted that the Statement of Undisputed Facts demonstrates that, as a matter of law, there was no post-2013 abandonment as well.

[12] One other especially baffling misrepresentation in Mr. Robinson's Opposition is the assertion that "Wilcox devotes much of his Motion to attacking an assignment theory." (Opposition, at 10:4 [Dkt. No. 135]).  *See also*,

## II.    THE "PRIORITY OF USE" ISSUE SHOULD BE SUMMARILY ADJUDICATED IN MR.  WILCOX'S FAVOR.

Mr. Robinson concedes that

- On November 24, 1992, the band The Pharcyde, consisting of Romye Robinson, Trevant "Slimkid3" Hardson, Derrick "Fatlip" Stewart, and Imani Wilcox, released its first album for sale to the public, Bizarre Ride II The Pharcyde.  [Undisputed Fact No. 1].

- Bizarre Ride II The Pharcyde contained the performances and work of each of the four Original Members of the band. [Undisputed Fact No. 2].

- The Certificate of Registration for The Pharcyde (Reg. No. 4,975,747) states that the "first use in commerce" was November 24, 1992. [Undisputed Fact. No. 3].

- November 24, 1992 was the date that the first The Pharcyde album was released, and the album contained the performances and work of each of the four Original Members of the band. [Undisputed Fact. No. 4].

- The specimen submitted to the USPTO with Robinson's Trademark Application was described as a tour poster promoting live performances by The Pharcyde on January 22, 2011. [Undisputed Fact No. 5]; and

- At the first The Pharcyde concert, each of the Original Members performed as The Pharcyde. [Undisputed Fact No. 6].

These facts prove that Mr. Robinson cannot establish the basic "test of ownership", which is "priority of use." *Sengoku Works, Ltd. V. RMC Intern., Ltd.*, 96 F. 3d 1217 (9th Cir. 1996)("It is axiomatic in trademark law that the standard test of ownership is priority of use.").  Mr. Robinson was not the first person to use The Pharcyde in commerce.  This is proved by, among other things, Mr. Robinson's own Trademark Application in which he proclaimed the "first use in

---

Opposition at 2:14 ("Wilcox attacks a supposed assignment theory.").  While the moving papers correctly point out that Mr. Robinson has since the beginning of the litigation argued that Mr. Wilcox assigned his rights to Mr. Robinson, the Motion acknowledges that there is now a different issue to "attack."

commerce" to be the date when the album containing the performances of each of the original Pharcyde members.

Mr. Robinson argues that "*Sengoku* supplies a general priority rule; it does not hold that early participation creates permanent, non-abandonable ownership." (Opposition, at 9:16-17 [Dkt. No. 135].).  That, of course, is irrelevant to the Motion.  Again, Mr. Robinson is arguing "well, even if that is true, it doesn't mean X").  The significance of the Issues being summarily adjudicated in Mr. Wilcox's favor may have changed given Mr. Robinson's bad faith litigation tactics.  But Mr. Robinson offers neither factual nor legal justification to prevent the summary adjudication that Mr. Robinson cannot prove "priority of use."[13]

## III.  <u>CONCLUSION</u>

Mr. Robinson has conceded that Mr. Wilcox was at one time a co-owner of The Pharcyde trademarks.  This was made explicit in the 1992 Recording Agreement. [Undisputed Fact No. 9]; the 2004 Disassociation Agreement [Undisputed Fact No. 10]; the June 2008 Tour Agreement [Undisputed Fact No. 11]; cease and desist letters written by Mr. Robinson's and Mr. Wilcox's counsel [Undisputed Fact No. 12]; the Verified Complaint filed in 2013 by Mr. Robinson and Mr. Wilcox [Undisputed Fact. No. 13]; and Mr. Robinson's 2013 Declaration filed in that litigation under penalty of perjury [Undisputed Fact. No. 14].

The question then, again, for Mr. Robinson is "when did Mr. Wilcox lose his co-ownership rights?"  At the Final Pretrial Conference, the answer to that

---

[13] Mr. Robinson suggests that, even if he were to lose the "priority of use" issue, he can still prevail because of his federal registration of the trademark.  Mr. Robinson argues that "none [of the cases cited by Mr. Wilcox] allows a party to overcome a federal registration…" (Opposition, at 2:23 [Dkt. No. 135].). That assertion is a flat-out false: The Court in *Sengoku* states:

> Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence. However, the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated. *Sengoku*, 96 F. 3d, at 1219.

question was October 22, 2013.  That issue – Mr. Wilcox abandoned his trademark rights as of October 22, 2013 – should be summarily adjudicated against Mr. Robinson.  His only arguments are:  (1) maybe a jury could find abandonment under a "totality" of conduct theory for which he has cited no case law; and (2) well, after 2013, maybe Mr. Wilcox "abandoned, forfeited, waived, or is estopped from asserting continuing rights."  As to the first argument, a jury can find abandonment only if the defending party proves that the elements of 15 USC §1127 are met and Mr. Robinson has failed to do so.  As to the second, those issues are irrelevant to the specific relief sought in the moving papers. And there is no evident answer to the question as to Mr. Robinson's new chosen date for the alleged "abandonment."

Mr. Robinson has not identified a disputed issue of fact to justify denying the Motion.  He has cited no case law that supports his abandonment theory.  Mr. Wilcox's Motion should be granted.

Dated:  July 21, 2026                    The Law Office of Hayes F. Michel, PC

/s/Hayes Michel
Hayes Michel, Attorney for Imani Wilcox

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Certificate of Compliance

Case Number No.: 2:23-cv-08517-SK

I am the attorney for Imani Wilcox. Using the word-count program on my computer, I can state that this brief contains no more than 4,152 words, excluding the items exempted by the Local Rules.

I certify that this brief complies with the word limit of L.R. 11-6.1.

Dated:  June 22, 2026                              __/s/Hayes Michel
                                                              Hayes Michel